UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **CHARLES A. ASPINWALL and ROBERT HUTCHEON, individually and on behalf of other similarly situated individuals** : : : : **Plaintiff,** : : : V. : : **RUDY'S LIMOUSINE SERVICE, INC., ROY SPEZZANNO and DANIEL SPEZZANO.,** : : **Defendant.** | CIVIL ACTION NO.: 3:14-cv-00388-AWT APRIL 25, 2015 |

**MEMORANDUM OF LAW IN SUPPORT OF
JOINT MOTION TO APPROVE FAIR LABOR STANDARDS ACT SETTLEMENT**

**I.      INTRODUCTION**

Charles A. Aspinwall and Robert Hutcheon ("Named Plaintiffs") and Defendants Rudy's Limousine Service, Inc. Roy Spezzano, and Daniel Spezzano (collectively, "Rudy's" or "Defendants"), through their counsel, submit this brief in support of their joint motion to approve a proposed Settlement Agreement ("Agreement") to resolve the Named Plaintiffs' claims asserted in this lawsuit under the Fair Labor Standards Act ("FLSA") and the Connecticut Minimum Wage Act ("CMWA").  The Court should approve the Agreement, which is not a class settlement agreement, because it is the result of arms' length negotiations, including a one day mediation before the Honorable Donna F. Martinez, U.S.M.J., and it is "a fair and reasonable resolution of a *bona fide* dispute" involving claims for unpaid overtime wages under the FLSA and the CMWA.

**II.     FACTUAL AND PROCEDURAL BACKGROUND**

On March 26, 2014, Plaintiff Aspinwall filed this lawsuit seeking unpaid wages under the FLSA and the CMWA for himself and other similarly situated Chauffeurs. (ECF No. 1). Aspinwall

1

filed the suit seeking certification of a collective under §216(b) of the FLSA and a Rule 23 class under the CMWA.  Because he alleged a willful violation under the FLSA, he claims that the applicable statute of limitations is three years going back to March 26, 2011 under 29 U.S.C. § 255(a).

On  July 8, 2014, Plaintiff Robert Hutcheon filed a Consent to Join Action and Authorization to Represent form, effectively opting into the Rule 216(b) FLSA collective action. (ECF No. 21).

The parties have litigated this matter in good faith and have conducted discovery including depositions of both named Plaintiffs and both individual Defendants.  On February 3, 2015, the parties jointly moved to stay this litigation so as to engage in settlement discussions (ECF #45). This Court granted that motion and stayed this litigation until March 15, 2015.  This Court also referred this matter to Magistrate Judge Martinez for a settlement conference.

On March 10, 2015, the Parties and their legal counsel attended a settlement conference with Magistrate Judge Martinez. By the end of the day, the Parties reached a settlement agreement in principle subject to Court approval. (*See* Settlement Agreement attached hereto as Ex. A).

### III.    LEGAL STANDARD

There are two ways that FLSA claims can be settled or compromised by employees: (1) a compromise supervised by the Department of Labor pursuant to 29 U.S.C. § 216(c); or (2) a district court-approved compromise pursuant to 29 U.S.C. § 216(b). *See Lynn's Food Stores Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). A district court may approve a proposed FLSA settlement if it determines that the compromise reached "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions" rather than "a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food*, 679 F.2d at 1354. Settlement

approval is within the court's discretion, which "should be exercised in light of the general judicial policy favoring settlement." *In re Sumitomo Copper Litig.,* 189 F.R.D. 274, 280 (S.D.N.Y 1999) (quoting I*n re Pain Webber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y.), *aff'd by*, 117 F.3d 721 (2d Cir. 1997).

A settlement's fairness is determined by looking at both the settlement's terms and the negotiating process leading to settlement. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted). Courts note that there is a "strong presumption" in finding a settlement fair if it has been negotiated at arms-length. *See, e.g., Maced Church v. Lancaster Hotel, LP*, No. 05-0153 (TLM), 2011 U.S. Dist. LEXIS 62063, at *26 (D. Conn. June 9, 2011)[1].

"Because, under the FLSA, 'parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date,' FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. Accordingly, the standard for approval of an FLSA settlement is lower than for a class action under Rule 23." *See Yuzary v. HSBC Bank USA, N.A.*, 2013 U.S. Dist. LEXIS 144327, 20, 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) (citations omitted).

IV.     ARGUMENT

   A. **This Court should approve the proposed settlement because there is a *bona fide* dispute.**

"The first step in analyzing the settlement agreement is determining whether there are FLSA issues that are 'actually in dispute'." *Rivera v. Dixson*, 2015 U.S. Dist. LEXIS 11248, at *4 (D. Md. Jan. 29, 2015). In this case, there are several issues actually in dispute. First, Defendants deny liability. Second, Defendants dispute whether or not overtime hours were worked and how compensable time should be calculated. Third, Defendants claim that many of its drivers have been fully paid as a result of a U.S. Department of Labor investigation. Fourth, Defendant denies

---

[1] Unpublished cases are attached hereto as Ex. B.

3

that liquidated and/or penalty damages apply.  Fifth, Defendants deny that their conduct was willful.

### B.  The proposed settlement is fair and reasonable.

The Court should approve the Agreement because it is fair and reasonable as it is the result of arms-length negotiations. *See, e.g., Maced. Church*, 2011 U.S. Dist. LEXIS 62063, at *26 (Courts note that there is a "strong presumption" in finding a settlement fair if it has been negotiated at arms-length.) Here, the settlement agreement was the result of negotiations which began weeks prior to the settlement conference and continued during the half day session mediated by the Honorable Magistrate Judge Martinez.  Furthermore, both the Named Plaintiffs and Defendants were represented during the negotiations by legal counsel experienced in employment matters. Under these circumstances, including an arms' length negotiation assisted by a Magistrate Judge, the strong presumption of fairness and reasonableness of the Agreement applies.  *See Castagna v. Madison Square Garden, L.P.*, 2011 U.S. Dist. LEXIS 64218, at *14, 2011 WL 2208614 (S.D.N.Y. June 7, 2011) ("Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement they achieved meets the requirements of due process.")

The recovery for the Named Plaintiffs and other Chauffeurs who may choose to accept payments mailed to them in exchange for a release also establish that the Agreement is fair and reasonable, especially when considering what each Chauffeur will be offered against the challenges they would have in bringing individual claims due to the fact that some of them signed releases and already received some compensation as a result of a DOL investigation, and that their surviving claims may have issues regarding their timeliness.

First, there are 12 Chauffeurs who opted into this litigation including the named Plaintiffs.

Under the proposed settlement, these Plaintiffs are being offered a total of $31,000 in compensation for overtime hours that they claim were worked. This amount is approximately x% of the amount these people claim to be owed. In return for these payments, these Plaintiffs relinquish their claims to liquidated damages.

Second, there are 93 other individuals who have received a distribution of back overtime wages as a result of a 2014 audit by the U.S. Department of Labor. As part of that distribution, those individuals signed release forms which released their federal claims. While these individuals do not have claims under the federal law, they do have claims under Connecticut state law to the extent that they can prove damages beyond what they received from the 2014 audit and to the extent that they can prove entitlement to Connecticut penalty damages. Because of the obvious difficulty of these claims, these individuals are being offered $200 each in return for their release of their remaining Connecticut claims. Given that the Defendants cooperated with the DOL investigation, it could be a challenge for the CMWA Plaintiffs to carry their burden at trial of proving that Defendant deprived them of overtime wages in bad faith, arbitrariness or unreasonableness. *See Tamborino v. Velocity Express, Inc*., 2008 Conn. Super. LEXIS 1527, at *81-83, 2008 WL 2582529 (Conn. Super. Ct. June 6, 2008) (held plaintiff failed to sustain burden of proof of establishing that defendant's withholding by the defendant of the $ 10,000 performance bonus met the requirements of "bad faith or arbitrariness or unreasonable.").

Third, the Named Plaintiffs are being paid modest service awards of $3,000 each. Each named Plaintiff earned these awards because they hired competent counsel, assisted counsel with the pleading and prosecution of this case, prepared for and sat for their depositions, prepared for the class wide settlement conference before Magistrate Judge Martinez and attended that settlement conference in person. Their $3,000 service awards are modest compared with other cases. *See, e.g.*, *Ali v. Boston Market,* 2012 U.S. Dist. LEXIS 54695 (D. Conn. 2012) (approving service payments/incentive awards in the sums of $12,000 and $8,000).

It is also worth noting that the releases contemplated by the proposed settlement agreement in this case are limited to the unpaid overtime claims, and are not overly broad. This also supports a finding that the settlement is fair and reasonable. In cases such as these, it is common for a settlement to release only those wage and hour claims brought before the court rather than require the individuals to sign a general release. *See Davis v. J.P. Morgan Chase*, 827 F. Supp. 2d 172, 180-81 (W.D.N.Y. 2011).

Here, the Parties reasonably believe that this case would require contentious litigation and substantial expense to complete. The Named Plaintiffs would seek to proceed as a collective action under the FLSA and as a Rule 23 class if it were not settled at this time. Defendants would likely oppose this on multiple grounds. Liability would also be hotly contested. Under these circumstances, the Court may reasonably conclude that continued litigation of the case will be so lengthy, complex and expensive as to weigh in favor of approving the settlement. Moreover, in cases like this one, where establishing liability is "no sure thing" for plaintiffs, the risks of proceeding with litigation weigh in favor of settlement. *See, e.g., Wal-Mart Stores*, 396 F.3d 96, at 118-19 (2d Cir. 2005) (antitrust case).

Although Named Plaintiffs' counsel believes that both the material facts and relevant law

support their claims, they recognize the uncertainty of the outcome of this litigation, the defenses that will be asserted, and the anticipated duration and expense of this trial. When the terms of the proposed settlement, which will confer immediate benefits upon the FLSA and CMWA Plaintiffs, are considered within a "risk/reward" analytical framework, the Named Plaintiffs and their counsel believes that the proposed Agreement is demonstrably fair, adequate and reasonable, and should therefore be approved by this Court. *See Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974) ("the Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, 'It has been held proper to take the bird in the hand instead of the prospective flock in the bush.'") (internal citation omitted).

### C. **The proposed attorneys' fees are reasonable when cross checked with the lodestar.**

In assessing the reasonableness of the attorneys' fees under the proposed settlement, several general principles of law are worth noting. The FLSA explicitly provides that "[t]he court in [an FLSA] action shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Further, courts recognize that availability of attorneys' fees under the FLSA is essential to incentivize legal counsel to represent individuals who are owed wages, especially in instances in which the plaintiffs' recovery may be small. *See, e.g.*, *Estrella v. P.R. Painting Corp.*, 596 F. Supp. 2d 723, 727 (E.D.N.Y. 2009) (noting that "courts have rejected the notion that fee awards should be proportionately tied to a plaintiff's recovery" and observing that FLSA fee-recovery provisions "were designed in part to secure legal representation for plaintiffs whose wage and hour grievances were too small, in terms of expected recovery, to create a financial incentive for qualified counsel to take such cases under conventional fee arrangements")

7

Here, under the Agreement, Named Plaintiffs' Counsel will receive a total of $39,400 to cover legal fees and costs. Said allocation of attorneys' fees and costs is reasonable given the fee agreement in place with the Named Plaintiffs, the challenges in this case to overcome arguments that CMWA Plaintiffs had waived any and all claims to unpaid overtime because they signed WH-58 releases as part of a DOL investigation, and the amount of worked put to date.

Named Plaintiffs' Counsel has spent over 194 hours of attorneys' and paralegals' time in interviewing witnesses, communicating with clients, drafting pleadings, attending to Rule 26(f) conferences, drafting discovery requests, taking and defending depositions, reviewing documents obtained in discovery, calculating damages, preparing for and attending the settlement conference. *See* Decl. of REH attached hereto as Ex. C. At Named Plaintiffs' Counsel's usual hourly rates, the value of legal fees to date is approximately 55,000.00. Thus, Plaintiffs' Counsel is receiving approximately 72% its actual fees. Declarations of Richard E. Hayber and Anthony J. Pantuso, III attached hereto as Exs. C and D. Moreover, to date the Hayber Law Firm LLC has incurred costs in the amount of $2,191.94 in court filing fees and other expenses, which it is rolling into the recovered attorneys' fees under the Agreement. See Ex. C.

In sum, in light of the fact that this was a difficult case, and that Plaintiffs' Counsel is taking less than its lodestar in legal fees, this Court should approve the proposed settlement agreement as reasonable.

## V. CONCLUSION

Here, as discussed above, the proposed settlement resolves bona fide disputes over unpaid wages under the FLSA and CMWA. Further, the proposed settlement is fair and reasonable as it is the product of arms-length negotiations between experienced legal counsel achieved with the assistance of a Magistrate Judge Martinez after a one day mediation. The Parties have submitted a copy of the complete Settlement Agreement with this motion, and the parties hereby represent that there are no other undisclosed agreements concerning the conditions for this settlement. Accordingly, this Court should grant approval to the Agreement.

Plaintiff,

By: /s/ ***Richard E. Hayber***
Richard E. Hayber
Fed Bar No.: ct11629
Hayber Law Firm LLC
221 Main Street, Suite 502
Hartford, CT 06106
rhayber@hayberlawfirm.com
Telephone: (860)522-8888
Facsimile:    (860)218-9555
***Attorney for Named Plaintiffs***

**CERTIFICATION OF SERVICE**

I hereby certify that on April 25, 2015, a copy of the foregoing was filed electronically and service made by mail to anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Courts electronic filing system [or by mail for anyone unable to accept electronic filing]. Parties may access this filing through the Courts system.

 */s/ Richard E. Hayber*
Richard E. Hayber